THE SANGAMO CLUB *et al.*, Plaintiffs-Appellees, *v.* THE DEPARTMENT OF REVENUE *et al.*, Defendants-Appellants—(The Island Bay Yacht Club, Plaintiff).

Fourth District No. 4—82—0827

Opinion filed June 21, 1983.

Neil F. Hartigan, Attorney General, of Springfield (Karen Konieczny, Assistant Attorney General, of counsel), for appellants.

Craig A. Randle, of Londrigan & Potter, P.C., of Springfield, for appellees.

JUSTICE ALLOY delivered the opinion of the court:

The issue on this appeal is whether a self-imposed 15% gratuity charge, which is added to these not-for-profit clubs' members' charges for food and beverages, is subject to the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1979, ch. 120, par. 440 *et seq.*) and the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 8—11—1). Imposition of the fixed 15% gratuity, which is added to all members' charges for food and beverages, was adopted by the boards of directors of plaintiff clubs, on behalf of the members of each club. The circuit court determined that the 15% gratuity was not subject to the above acts, and it ordered that funds held in a special protest fund be returned to the clubs. The State Department of Revenue appeals.

The pivotal question for determination is whether the gratuity charges imposed by the clubs upon members' bills were mandatory or discretionary. (*Peoria Hotel Co. v. Department of Revenue* (1980), 87 Ill. App. 3d 176, 178-79, 408 N.E.2d 1182; *Fontana D'Or, Inc. v. Department of Revenue* (1976), 44 Ill. App. 3d 1064, 358 N.E.2d 1283.) The following stipulated facts formed the basis for the court's determination:

"1. The Plaintiffs are not-for-profit corporations operating as private clubs, duly organized and existing under the laws of the State of Illinois.

2. The Plaintiff Clubs maintain a restaurant and bar facility on the premises with use of said facility being restricted to members and guests of club members.
\*\*\*

4. The Plaintiff Clubs employ individuals to provide services in conjunction with the operation of the restaurant and bar facility, including waiters, waitresses, bartenders and busboys. The aforesaid employees of the Plaintiffs are compensated by a fixed salary paid by the Plaintiff Clubs.

5. The charges for food and beverages served in the Plaintiff Clubs' restaurant and bar facilities are assessed to the individual members on monthly billing statements with no cash be-

ing transferred at the time said food and beverages are consumed.

6. The Board of Directors of each Plaintiff as members and acting on behalf of the remaining members enacted a By-Law, or Club Rule, providing for the addition of a gratuity to be added to each bill for food and beverage based upon a percentage of the cost of the food and beverages. The gratuity was implemented as a codification of the general custom of 'tipping' enacted by the Board of Directors as members and representatives of the membership in order to avoid any inequality in the service provided to the various members based upon the ability of an individual member to 'tip' in excess of the generally accepted custom.

7. The amount of the gratuity added to the billing statement of the individual member is an amount generally accepted as a reasonable gratuity.

8. All of the monies collected as a result of the percentage gratuity are paid directly to the service personnel separate and apart from their fixed wages.

9. Each of the Plaintiff Clubs has also invoked a rule prohibiting any additional gratuity or 'tip' being given to the service personnel other than that added to the monthly billing statement.

10. The Department of Revenue of the State of Illinois has assessed and collected from the Plaintiff Clubs the tax imposed by the Retailers' Occupation Tax Act, Chapter 120, Section 440, et seq., and under the Cities and Villages Act, Chapter 24, Section 8—11—1, of the Illinois Revised Statutes on these monies collected as a gratuity.

11. The Plaintiffs have paid monies so assessed under protest and said monies have been segregated in a special fund by the Defendants pending resolution of this action."

The State argues that the issue is controlled by the decisions in *Peoria Hotel Co. v. Department of Revenue* (1980), 87 Ill. App. 3d 176, 408 N.E.2d 1182, *Fontana D'Or, Inc. v. Department of Revenue* (1976), 44 Ill. App. 3d 1064, 358 N.E.2d 1283, and *Cohen v. Playboy Clubs International, Inc.* (1974), 19 Ill. App. 3d 215, 311 N.E.2d 336. However, all of these cases dealt with commercial businesses which imposed an automatic charge, designated "gratuity," upon customers, without any discretion regarding the charge afforded the customers at all. In those cases, the courts determined that the "gratuity" charges were subject to occupation tax, because the payment was mandatory.

In the case at bar, the charges were imposed by the members of the clubs, upon themselves, through their duly elected boards of directors. Although the action was taken collectively, through the boards, that does not alter the essentially voluntary and discretionary nature of the action. Should the members so decide, they could presumably act to modify the nature or amount of the gratuity or abolish it altogether, through board action. As stipulated, the gratuity that was implemented by each clubs' members was as a "codification of the general custom of 'tipping,' " and "in order to avoid any inequality in the service provided to the various members." We conclude that since these fixed 15% gratuity charges were imposed as a voluntary and discretionary act of the members of the clubs, they are not to be included in gross receipts for the purpose of the imposition of occupation taxes. In *Fontana D'Or*, the court noted the distinction between commercial businesses which externally impose a mandatory gratuity on charges and those gratuities adopted, pursuant to club bylaws, by club membership as a codification of the social custom of tipping. (44 Ill. App. 3d 1064, 1066, distinguishing *Big Foot Country Club. v. Wisconsin Department of Revenue* (1975), 70 Wis. 2d 871, 235 N.W.2d 696.) The *Big Foot* case noted in *Fontana D'Or* was a Wisconsin Supreme Court decision on similar facts as that pertaining here. There, and we cite with approval, the court stated:

> "This mandatory 15 per cent add-on service charge is a mere codification by the club's bylaws of the social custom of tipping. Without this bylaw, the members undoubtedly would tip a percentage approaching 15 per cent of their bill anyway, out of social custom. It is conceded that this tip would not be subject to the sales tax. So, too, the 15 per cent service charge should not be subject to the sales tax. Both are paid to the service employees and the element of discretion as to whether to leave 15 per cent or not is essentially the same. Without the bylaw imposing the 15 per cent service charge, the members' discretion to leave a 15 per cent tip would be constrained by social custom. The social custom in this case has merely been transformed into a club bylaw. The members of the appellant collectively exercised their discretion and adopted the bylaw requiring the 15 per cent service charge. This 15 per cent is a reasonable amount and corresponds to the usual amount left by the general public in public restaurants. The members, if they chose, could by simply amending the bylaws of the club, again exercise their collective discretion and increase or decrease the amount to be added on their bills. Although this 15 per cent is

called a service charge, it is more appropriately viewed, under the circumstances of this case, as a gratuity or tip for the service employees. As such, it is not part of the gross receipts of the appellant." (70 Wis. 2d 871, 877, 235 N.W.2d 696, 699.)

We agree with the basic reasoning of the court in *Big Foot.*

For the reasons stated above, we affirm the judgment of the circuit court of Sangamon County.

We note, in closing, that the legislature amended the Retailers' Occupation Tax Act, effective January 1, 1980, to specifically exclude mandatory service charges from gross receipts where the charges are separately stated and paid directly to the service employees. (1979 Ill. Laws 4240.) Thus, our decision herein applies only to those funds paid under protest from May 1977 through December 1979 by plaintiffs.

Affirmed.

STOUDER, P.J., and SCOTT, J., concur.