(No. 56773.—

MATERIAL SERVICE CORPORATION, Appellant, v.
THE DEPARTMENT OF REVENUE, Appellee.

*Opinion filed October 21, 1983.—Rehearing
denied December 2, 1983.*

Richard R. Elledge and Louis R. Hegeman, of Gould & Ratner, of Chicago, for appellant.

Tyrone C. Fahner, Attorney General, of Springfield (Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

This appeal involves the review of an administrative decision by the defendant, the Department of Revenue (Department), that the plaintiff, the Material Service Corporation, is liable under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 440 *et seq.*) on minimum load charges uniformly collected on small sales of ready-mix concrete. The defendant issued a final deficiency tax assessment for taxes, penalties and interest in the amount of $25,301.58, covering the period from July 1973 through December 1976. The circuit court of Cook County on administrative review vacated the final assessment. The appellate court reversed the judgment of the circuit court (105 Ill. App. 3d 74), and we granted the plaintiff's petition for leave to appeal (87 Ill. 2d R. 315).

The plaintiff is in the business of manufacturing and selling ready-mix concrete. The concrete is mixed and delivered by trucks with rotating drums having a maximum capacity of 10 cubic yards. The concrete is sold at a uniform price per cubic yard. In addition, a fixed "minimum load charge" of $27 is charged on all sales of less than five cubic yards per truck.

On April 27, 1966, the Department issued a letter ruling in response to the plaintiff's inquiry concerning the liability for tax on the minimum load charge under the Retailers' Occupation Tax Act. This ruling in part stated:

> "In reply to your request for a ruling concerning minimum load charges *** which are separately contracted for and separately charged, please be advised that they are excludable in the computation of retailers' occupation tax."

On December 8, 1977, the Department issued a notice

of tax liability assessing a deficiency with respect to approximately 12,500 minimum load charges collected by the plaintiff between July 1973 and December 1976. After an administrative hearing requested by the plaintiff, the hearing officer held in favor of the Department, concluding that it was not bound by its letter ruling, and on March 29, 1979, the Department issued a final assessment.

The plaintiff filed a complaint in the circuit court for administrative review, and on January 11, 1980, the circuit court entered a final order sustaining the imposition of the tax on the minimum load charges. The record contains the affidavit of Francis R. Burke, the plaintiff's general sales manager, which stated that the minimum load charge is related to the cost of providing drivers and maintaining vehicles in supplying minimum loads. Considering the affidavit, the court held that the charge is part of the transportation cost of delivering concrete and thus includable in the total cost of manufacture. The court noted that article III, section 3, of the Department's Rules and Regulations provides that, "[i]n computing retailers' occupation tax liability, no deduction shall be made by a taxpayer from gross receipts or selling prices on account of *** freight or transportation costs." The plaintiff's motion to vacate was denied, but after considering a motion by the plaintiff to reconsider, the court entered an amended final order on October 17, 1980. In it the court reaffirmed its holding that the minimum load charges are not excludable from gross receipts in determining the retailers' occupation tax, but it judged that the Department was bound by its letter ruling which, the court said, was relied upon by the plaintiff. Accordingly, the court vacated its January 11, 1980, order sustaining the tax and final assessment against the plaintiff.

The Department appealed from that part of the amended final order which set aside the January 11, 1980, order allowing the final assessment against the plaintiff. The plaintiff filed a cross-appeal from the part of the order

affirming that the minimum load charges are not excludable from gross receipts and are taxable.

Considering later that a cross-appeal was not necessary to preserve its contention, the plaintiff, in one of the briefs it filed in the appellate court appeal, stated that it was withdrawing its cross-appeal. Both the appellant's and the appellee's briefs, however, did discuss the issue the plaintiff raised on the cross-appeal. Although noting that the plaintiff had not formally moved for withdrawal of its cross-appeal and that no order dismissing it had been entered, the appellate court refused to consider whether the circuit court erred in finding that the minimum load charges were subject to taxation. The appellate court held that the minimum load charges had not been separately contracted for and thus the terms of the Department's letter ruling that minimum load charges would be excludable were not met. Under such circumstances, the deficiency assessment imposed on the plaintiff was proper, the appellate court held.

A party cannot complain of error which does not prejudicially affect it, and one who has obtained by judgment all that has been asked for in the trial court cannot appeal from the judgment. (*Hillmer v. Chicago Bank of Commerce* (1940), 375 Ill. 266; *People ex rel. Jones v. Adams* (1976), 40 Ill. App. 3d 189; *In re Estate of Trapani* (1959), 21 Ill. App. 2d 19.) "It is fundamental that the forum of courts of appeal should not be afforded to successful parties who may not agree with the reasons, conclusion or findings below." (*Illinois Bell Telephone Co. v. Illinois Commerce Com.* (1953), 414 Ill. 275, 282-83; see *N-Ren Corp. v. Illinois Commerce Com.* (1981), 98 Ill. App. 3d 1076.) It cannot be said that the plaintiff waived the question of whether minimum load charges are taxable by withdrawing its cross-appeal. Here the plaintiff sought reversal of the administrative decision imposing the deficiency assessment. Although the circuit court said that the minimum load charges were ordinarily taxable, they were not

to be taxed in this factual situation, and the court granted all of the requested relief. Under such circumstances, and contrary to what the Department contends, it was unnecessary for the plaintiff to file a cross-appeal. (See *Kerner v. State Employees' Retirement System* (1977), 53 Ill. App. 3d 747.) It is the judgment and not what else may have been said by the lower court that is on appeal to a court of review. (*Rabus v. Calcari* (1959), 16 Ill. 2d 99; *Gould v. Gould* (1951), 408 Ill. 526.) The reviewing court is not bound to accept the reasons given by the trial court for its judgment (*Weber v. Woods* (1975), 31 Ill. App. 3d 122), and the judgment may be sustained upon any ground warranted, regardless of whether it was relied on by the trial court and regardless of whether the reason given by the trial court was correct. (*Monarski v. Greb* (1950), 407 Ill. 281; *Bullman v. Cooper* (1936), 362 Ill. 469; 5A C. Nichols, Illinois Civil Practice sec. 5663 (1975 rev. vol.).) Findings of the trial court adverse to the appellee do not require the appellee's cross-appeal if the judgment of the trial court was not at least in part against the appellee.

The defendant notes, however, that it has been held that "where a general decision for the appellee contains a specific finding unfavorable to him and he fails to file a cross-appeal, the adverse finding is not properly before the reviewing court." (*Cleys v. Village of Palatine* (1980), 89 Ill. App. 3d 630, 635; *Village of Arlington Heights v. National Bank* (1977), 53 Ill. App. 3d 917.) The appellate court here cited *Cleys* in refusing to consider the issue raised in the cross-appeal. All of these opinions rely on *City of Wilmington v. Industrial Com.* (1972), 52 Ill. 2d 587, for support. In *Wilmington*, however, the circuit court had denied a claim for interest but otherwise upheld the compensation award for the appellee. This court held that the appellee's failure to cross-appeal from the part of the judgment denying the claim for interest precluded consideration of the issue. Different from *Wilmington*, no part of

the judgment here was adverse to the plaintiff. The appellate court should have considered the plaintiff's contention that the circuit court erred in finding that the minimum load charges were subject to the retailers' occupation tax.

Section 2 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 441), with several exceptions not relevant here, imposes a tax "upon persons engaged in the business of selling tangible personal property at retail ***." Section 1 of the Act (Ill. Rev. Stat. 1977, ch. 120, par. 440) provides the following definitions:

" 'Sale at retail' means any transfer of the ownership of or title to tangible personal property to a purchaser, for the purpose of use or consumption, *** for a valuable consideration ***.

\* \* \*

'Selling price' or the 'amount of sale' means the consideration for a sale *** determined without any deduction on account of the cost of the property sold, the cost of materials used, labor or service cost or any other expense whatsoever ***.

\*\*\*

'Gross receipts' from the sales of tangible personal property at retail means the total selling price or the amount of such sales, as hereinbefore defined."

It is the plaintiff's contention that the minimum load charge is a fee separate from the selling price of a load of concrete and should not be includable in gross receipts taxable under the Act. The plaintiff characterizes the charge as "an additional fee which operates to discourage separate deliveries of small quantities of a bulk product. It provides a negative inducement." The "somewhat arbitrary" charge, the plaintiff says, "looks more like a penalty than anything else." The Department argues that the charge is an inseparable part of a single transaction—the sale and delivery of pre-mixed concrete. As stated earlier, there was evidence that the charge is related to the cost of providing drivers and maintaining the ready-mix trucks. The Department contends that the minimum load charge is part of the

transportation cost of delivering concrete which is includable in the total cost of manufacture.

We agree with the Department's position. It is not disputed that concrete must be delivered in a ready-mix truck so as to maintain a uniform mixture and to prevent it from hardening prior to use. In *Gapers, Inc. v. Department of Revenue* (1973), 13 Ill. App. 3d 199, it was held that where the delivery of goods sold was indispensable to the completion of the sale, and not merely incidental, delivery charges are part of the cost of doing business and may not be deducted from gross receipts for purposes of the retailers' occupation tax. The plaintiff attempts to distinguish *Gapers*, saying that the charge is imposed because of the amount of concrete being transported and not because of the transportation. This argument fails, since the charge is based on the cost of providing drivers to transport the concrete. That Material Service waives or chooses to "absorb" that cost in case of large, and more profitable, sales of concrete is not determinative.

The plaintiff's suggestion that the charge is similar to the "fixed fee" at issue in *Chet's Vending Service, Inc. v. Department of Revenue* (1978), 71 Ill. 2d 38, is not convincing. In *Chet's Vending*, the plaintiff contracted with employers to provide vending services to their employees. The employers paid a fixed fee for this service which was not linked to the sale of food or other tangible goods to employees. The plaintiff paid retailers' occupation tax on the compensation received from the employees on the purchase of food and other goods. This court held that the contract with employers to provide vending services was separate from the individual sales of food for consumption and that the fixed fee was not taxable under the Act. Here the minimum load charge was an inseparable part of the sales of concrete.

We need not address the question of whether the letter ruling was binding on the Department since, as the appel-

late court showed, conditions or terms of the ruling were not satisfied. "It shall be presumed that all sales of tangible personal property are subject to tax under [the Retailers' Occupation Tax] Act until the contrary is established, and the burden of proving that a transaction is not taxable hereunder shall be upon the person who would be required to remit the tax to the Department if such transaction is taxable." (Ill. Rev. Stat. 1977, ch. 120, par. 446.) The plaintiff has not met its burden of proving that the minimum load charge was separately contracted for. The plaintiff's contention that the Department conceded at the evidentiary hearing that there were separate contracts is plainly wrong. The Department's auditor stated at the hearing that "whether or not the minimum load was actually separate from the bill and whether it was separately contracted for, I don't know whether this is true or not, so I can't say whether it was or wasn't." This comment of a witness cannot be read to mean that the Department acknowledged that there had been separate contracts.

That minimum load charges were part of all concerned sales appears clear. The plaintiff's citation in its reply brief of a single instance, out of approximately 12,500 transactions, in which the minimum load charge was not imposed on a sale of less than five cubic yards seems to be strong evidence that the charge was collected on "all" minimal load deliveries. The charge was required for the sale and delivery of all purchases of less than five cubic yards, and it cannot be said that there were separate contractual relationships. See *Fontana D'Or, Inc. v. Department of Revenue* (1976), 44 Ill. App. 3d 1064; *Cohen v. Playboy Clubs International, Inc.* (1974), 19 Ill. App. 3d 215.

For the reasons given, the judgment of the appellate court is affirmed.

*Judgment affirmed.*