CYNTHIA ANN HALL, Plaintiff-Appellant, v. LINN WILLIAM EATON, JR., Indiv. and as Ex'r of the Will of Mildred K. Eaton, Deceased, Defendant-Appellee (Mercantile Trust and Savings Bank *et al.*, Defendants).

Fourth District   No. 4—93—0021

Opinion filed March 18, 1994.

Carroll Baymiller and Kenneth L. Ott, both of Baymiller & Radley, of Peoria, for appellant.

Franklin M. Hartzell and Stanley L. Tucker, both of Hartzell, Glidden, Tucker & Hartzell, of Carthage, for appellee.

JUSTICE COOK delivered the opinion of the court:

Plaintiff Cynthia Ann Hall brought suit asking the trial court to declare null and void a condition imposed by her father's will upon his devise to her of an undivided one-half interest in a remainder to real estate. The trial court dismissed the suit on motion of plaintiff's brother, defendant Linn W. Eaton, Jr. Hall appeals, contending the condition was void because of public policy. We affirm.

Linn W. Eaton, the father of Hall and Eaton, Jr., died in 1983

owning an undivided one-half interest in three tracts of land in Schuyler County. Eaton's will devised a life estate in the land to his wife, Mildred K. Eaton, and the remainder to his children, Hall and Eaton, Jr., in equal shares. The will specifically provided:

"SECTION 2

I give to my spouse a life estate in all of the real estate which I may own at the time of my death with remainder to my two children, Linn William Eaton, Jr., and Cynthia Ann Hall, in equal shares, except that if Cynthia Ann Hall shall at the time of the death of my spouse be a married person, I give the share of the real estate which would have passed to her to Mercantile Trust and Savings Bank, Quincy, Illinois, as trustee as hereinafter provided."

The will contained provisions for a trust, including the following:

"SECTION 9

In the event that my daughter, Cynthia Ann Hall, shall be married at the date of the death of the latter to die of my spouse and myself, I give that portion of the estate which would have passed to my daughter, to Mercantile Trust and Savings Bank, Quincy, Illinois, as trustee of the 'Cynthia Ann Hall Trust.'

SECTION 10

(1) Until the termination of the trust and during the life of my daughter, the trustee shall pay to my daughter the net income of the trust at least quarter annually and, in addition such amounts from principal as the trustee from time to time believes desirable for her comfortable maintenance, medical care and welfare, considering her other income known to the trustee.

(2) The trust shall terminate upon my daughter becoming a widow. Whereupon, the trustee shall distribute the principal and accrued or undistributed net income of the trust to my daughter. In the event that my daughter's spouse shall outlive my daughter, the trust shall terminate upon the death of my daughter. Whereupon, the trustee shall distribute the principal and accrued or undistributed net income of the trust to my son, Linn William Eaton, Jr., or to his descendants, if any, if he be deceased, except as provided in Section 11."

Hall was married to her current husband at the time of her father's will, his death, and Mildred's death. Hall's complaint alleged in count I that the provisions of the will imposed conditions on the devise of the property which were void as against public policy. Count II sought partition of the property between Hall and Eaton, Jr. On October 19, 1992, Eaton, Jr., filed (1) a motion to dismiss, alleging that Hall's complaint failed to state any known cause of action for

construction of the will, and (2) a motion for judgment on the pleadings, alleging the claim presented by Hall was moot. The trial court granted the motion to dismiss, holding it had no jurisdiction to hear the matter because the cause was not filed within six months after the admission of the will to probate. We disagree.

■■ ■ Section 8—1 of the Probate Act of 1975 requires that petitions to contest the validity of a will be filed within six months after admission of the will to probate. (Ill. Rev. Stat. 1991, ch. 110$^1$/$_2$, par. 8—1.) The issue in a will contest is whether the writing produced is the will of the decedent; any ground which, if proved, would invalidate the instrument as a will may state such a cause of action. (*Roeske v. First National Bank* (1980), 90 Ill. App. 3d 669, 671, 413 N.E.2d 476, 478.) Grounds for invalidating a will include undue influence (*In re Estate of Walls* (1990), 203 Ill. App. 3d 574, 580, 561 N.E.2d 344, 347; *Schmidt v. Schwear* (1981), 98 Ill. App. 3d 336, 342, 424 N.E.2d 401, 405; *Roeske*, 90 Ill. App. 3d at 671, 413 N.E.2d at 478), lack of testamentary capacity (see *Manning v. Mock* (1983), 119 Ill. App. 3d 788, 804-05, 457 N.E.2d 447, 456-57; *Beyers v. Billingsley* (1977), 54 Ill. App. 3d 427, 437-38, 369 N.E.2d 1320, 1328), fraud (see *In re Estate of Gray* (1962), 39 Ill. App. 2d 239, 247, 188 N.E.2d 379, 382), revocation (*Roeske*, 90 Ill. App. 3d at 671, 413 N.E.2d at 478; *In re Estate of Minsky* (1977), 46 Ill. App. 3d 394, 399, 360 N.E.2d 1317, 1321), and ignorance of the contents of the will (see *Pepe v. Caputo* (1951), 408 Ill. 321, 325, 97 N.E.2d 260, 262). Invalidity of part of the will based on one of these grounds, if it would defeat decedent's overall testamentary intent and scheme, may invalidate the entire will. (See *Williams v. Crickman* (1980), 81 Ill. 2d 105, 115-16, 405 N.E.2d 799, 804.) The action here, however, did not challenge the will, or any part thereof, as not being the will of the decedent. This action was for construction of the devise to Hall and it was not required that the petition be filed within six months of admission of the will to probate. See *In re Estate of Moerschel* (1980), 86 Ill. App. 3d 482, 485, 407 N.E.2d 1131, 1134; see *Blue v. Bryant* (1966), 77 Ill. App. 2d 467, 471-72, 222 N.E.2d 512, 514 (applying *laches* to a will construction case).

Although we disagree with the trial court's ruling that this cause of action is barred by the statute of limitations, we may sustain a judgment upon any ground which is called for by the record, regardless of whether the ground was relied upon by the trial court and regardless of whether the reason given by the trial court was correct. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12; *Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 148, 478 N.E.2d 384, 389-90.) "It is the

judgment and not what else may have been said by the lower court that is on appeal to a court of review." (*Material Service*, 98 Ill. 2d at 387, 457 N.E.2d at 12.) However, the appellate court should not consider different theories or new questions not raised in the trial court if they might have been refuted or overcome had they been presented below. Further, the appellate court should take care that litigants are not deprived of an opportunity to present argument. *Geaslen v. Berkson, Gorov & Levin, Ltd.* (1993), 155 Ill. 2d 223, 230, 613 N.E.2d 702, 705 (correctable pleading defect which had not been raised in trial court).

Linn, Jr.'s motion to dismiss alleged that the complaint failed to state a cause of action and that, as of the date the complaint was filed, divorce would have no effect upon Hall's title. Those questions were argued to the trial court; in fact, the issue of the statute of limitations was raised not by the parties but by the court. Those questions were also addressed by the parties in their briefs in this court. We choose to consider the question whether the language of the will constituted an impermissible encouragement of divorce, which is a question of law, and on that basis affirm the decision of the trial court. A complaint which does not plead sufficient facts to establish a cause of action may be dismissed on motion. It does not appear possible that any amendment to this complaint could enable it to withstand a motion to dismiss.

■ A condition to a devise, the tendency of which is to encourage divorce or bring about separation of husband and wife, is against public policy, and void. (*In re Estate of Gerbing* (1975), 61 Ill. 2d 503, 507, 337 N.E.2d 29, 32.) However, if the dominant motive of the testator is to provide support in the event of such separation or divorce, the condition is valid. *Gerbing*, 61 Ill. 2d at 507, 337 N.E.2d at 32-33; *Will of Heller: Mau v. Heller* (1968), 39 Wis. 2d 318, 322-23, 159 N.W.2d 82, 84.

Is it worse to encourage a child to divorce a certain individual, or at an earlier stage to encourage a child not to marry that individual? It is said that attempts to prevent unmarried children from marrying at all (general restraints) are contrary to public policy and void. However, attempts to prevent unmarried children from marrying named individuals (partial restraints), or from marrying before a certain age, or from marrying without consent, are valid. Attempts to prevent the remarriage of spouses are valid. Browder, *Conditions and Limitations in Restraint of Marriage*, 39 Mich. L. Rev. 1288, 1323 (1941) (hereinafter Browder); G. Bogert, The Law of Trusts & Trustees § 211, at 131-36 (rev. 2d ed. 1992); *Glass v. Johnson* (1921), 297 Ill. 149, 151-52, 130 N.E. 473, 474; *In re Estate of Gehrt* (1985), 134 Ill. App. 3d 308, 310, 480 N.E.2d 151, 152.

Not every encouragement of divorce is objectionable. The interest of parents in advising and protecting their children, even after marriage, is recognized by a privilege to alienate the affections of a spouse, or to induce one spouse to leave another, where that is done to advance what the parents reasonably believe to be their child's welfare. (W. Keeton, Prosser & Keeton on Torts § 124, at 922 (5th ed. 1984).) It might not be objectionable to encourage divorce where the marriage is not a "harmonious" one. *Gerbing*, 61 Ill. 2d at 507-08, 337 N.E.2d at 33 (where separation or action for divorce took place before the execution of will, condition may not be one which encourages divorce, and may be valid).

Even where the testator's intent is clearly some legitimate purpose, such as providing support for an unmarried child, or preventing misappropriation of assets by the child's spouse, there will be some encouragement to divorce. (See Browder, 39 Mich. L. Rev. at 1326 ("a condition against marriage is as likely to induce celibacy where the intention is to provide support as where the intention is to restrain marriage").) The *Gerbing* language that a condition "the tendency of which" (*Gerbing*, 61 Ill. 2d at 507, 337 N.E.2d at 32) is to encourage divorce is void could be read broadly to strike down all conditions. The supreme court in *Gerbing* immediately rejected such a reading, however, by stating that where the dominant motive is to provide support the condition is valid (even if there is a tendency to encourage divorce).

*Gerbing* mentioned only a motive to provide support in the event of divorce. (*Gerbing*, 61 Ill. 2d at 507, 337 N.E.2d at 32.) Other similar motives may be equally valid. The testator's dominant motive in this case, as reflected in his will, was to protect Hall from misappropriation on the part of her husband. The argument could be made that the restraint was a general one, preventing Hall from being married to anyone, not just her current husband, at the time of Mildred's death. More realistically it should be noted that Hall was married to her current husband at the time the will was executed and at the time of Eaton's death. Eaton's concern was not one with spouses in general but with the particular spouse to whom Hall was married. Linn, Jr., was also married, but no similar restrictions were imposed in his case. See also Browder, 39 Mich. L. Rev. at 1329 (a motive to keep property in the testator's family or out of the hands of a beneficiary's future spouse should be sustained against the charge that it is an effort to restrain marriage).

■ The important consideration in this case is that, at the time the suit for construction was brought, the condition in the will had *no* "tendency *** to encourage divorce or bring about a separation of

husband and wife." (*Gerbing*, 61 Ill. 2d at 507, 337 N.E.2d at 32.) In *Gerbing* the beneficiary would receive the principal if at any time he and his named wife were divorced and remained divorced for two years. In the present case once the trust came into existence, once it was determined that Hall was married at the time of her mother's death, Hall had nothing to gain by a divorce. Even if Hall then divorced her husband she would not be entitled to principal unless she became "a widow." If Hall's "spouse" survived her the principal would pass to Linn, Jr., or his descendants. (The trust is written in terms which seemingly did not anticipate that Hall might be divorced.)

In *Gehrt* (134 Ill. App. 3d at 309, 480 N.E.2d at 151), the testator made a bequest to his son's widow unless " 'she remarries before the time of my death.' " This court held that as the will spoke only as of the date of death of the testator, *the will* did not have any tendency to discourage remarriage. If the daughter-in-law had remarried before the date of the testator's death, she took nothing; if she had not remarried she took the bequest. The testator could as easily have not mentioned remarriage but instead written a new will leaving out the daughter-in-law in the event the daughter-in-law remarried. This case would have been very similar to *Gehrt* if Mildred had died before Linn, Sr. As it was, Hall certainly became aware of the condition when Linn, Sr.'s will was probated, and would have been aware that she could receive principal if she divorced her husband and did not remarry before Mildred died. Still, Hall resisted any such temptation, and at the time of the suit for construction of the will the condition cannot be said to encourage divorce. Hall's divorce at the time suit was filed would have no effect upon the interest which she took.

For the reasons stated above, we affirm the judgment of the circuit court of Schuyler County.

Affirmed.

McCULLOUGH, P.J., and STEIGMANN, J., concur.