*In re* MARRIAGE OF NONA WILSON ALBRECHT, Petitioner-Appellant, and FRANK ALBRECHT, Respondent-Appellee.

Fourth District   No. 4—93—0881

Argued June 21, 1994.—Opinion filed August 26, 1994.

COOK, J., dissenting.

Gloria A. Morris (argued), of Hayes Law Office, of Springfield, for appellant.

W. Scott Hanken and Mark Rabin (argued), both of Long, Morris, Myers, Rabin, Shuff & Taylor, P.C., of Springfield, for appellee.

JUSTICE KNECHT delivered the opinion of the court:

Petitioner, Nona Wilson Albrecht, appeals portions of the judgment dissolving her marriage to respondent, Frank Albrecht. Petitioner argues the trial court abused its discretion in classifying and dividing the marital property and denying maintenance. We affirm in part, reverse in part, and remand.

Petitioner contends the trial court failed to reimburse the marital estate for marital funds contributed to respondent's nonmarital residence. The parties agree improvements were made to the residence where they lived during the course of the marriage and the improvements were paid for with marital funds. Some of the funds were expended on improvements, and some of the funds were expended on maintenance. Petitioner presented evidence as to the total amount expended on improvements and, additionally, attempted to prove an increase in fair market value for the home as a whole. Respondent disagreed with some of the monetary figures used by petitioner and an increase in fair market value was never proved by competent evidence. The trial court ruled there was no proof of an increase in fair market value attributed to the improvements and gave no contribution to the marital estate for the improvements made to the residence before awarding the residence to respondent as his nonmarital property.

■ Section 503(c)(2) of the Illinois Marriage and Dissolution of Marriage Act (Act) provides a right to reimbursement for contribu-

tions made by one estate which have enhanced the value of an item of property classified as belonging to another estate. (Ill. Rev. Stat. 1991, ch. 40, par. 503(c)(2).) The reimbursement is made to the contributing estate, not to the contributing spouse. (*In re Marriage of Morse* (1986), 143 Ill. App. 3d 849, 855, 493 N.E.2d 1088, 1092.) Reimbursement requires a contribution be traceable by clear and convincing evidence. (*In re Marriage of Guntren* (1986), 141 Ill. App. 3d 1, 6, 489 N.E.2d 1120, 1123.) Evidence of appreciation in value to a nonmarital residence is not necessary under section 503(c)(2) where a marriage is of short duration and clear and convincing evidence of contributions of marital funds exists. *In re Marriage of Adams* (1989), 183 Ill. App. 3d 296, 304-05, 538 N.E.2d 1286, 1292.

■ Petitioner's failure to prove the nonmarital residence appreciated in value because of the improvements does not mean the marital estate cannot be reimbursed for contributions to the nonmarital estate. To the extent marital funds were expended to maintain the residence, the marital estate (petitioner and respondent as a couple) derived the benefit of living in a well-maintained and comfortable home. Improvements, which the marital estate also derived some benefit from, will *remain* with the nonmarital residence after the dissolution. Those improvements may have some value even if they do not cause the nonmarital residence to appreciate in value. Contributions by a marital estate to a nonmarital residence may be reimbursed to the marital estate if proved by clear and convincing evidence, and the contributing estate has not already been compensated. Simply put, it is not equitable to permit the former spouse who owns the nonmarital residence to enjoy the improvements made by marital funds without some reimbursement or credit to the marital estate.

■ Here, the marriage lasted only six years and petitioner presented evidence in the form of receipts for at least some of the improvements she claims were made. The trial court must determine based on the evidence already presented whether those contributions the marital estate made to respondent's nonmarital residence were clearly proved, and whether the marital estate has already been compensated. The amounts proved as contributed to respondent's house and uncompensated should be credited to the marital estate and divided according to the provisions of section 503 of the Act. Ill. Rev. Stat. 1991, ch. 40, par. 503.

■ Petitioner also contends the trial court abused its discretion when it awarded the marital property of the parties. The court awarded each party the personal property in his or her possession finding neither party had presented evidence of the fair market value

of the property. The court also awarded petitioner 52% of the marital property other than personal property, or $23,000, payable in monthly installments of $350.

Petitioner testified at the time the parties separated she used respondent's pickup truck and a van to remove personal property from the marital residence. After two trips, respondent would no longer allow her to use his truck. There was no evidence respondent refused to let petitioner remove any more property, only that he would no longer let her use his truck. Petitioner presented the court with a lengthy list of all property still in respondent's possession with monetary values attached to each item and another list with items in her possession. The lists included appliances, furniture, home furnishings, tools and "collections." Petitioner testified some of the values were obtained from original receipts, some from replacement costs. None of the values were current values for the used items. Respondent disagreed with many values and also disputed whether many items were actually purchased during the marriage. It is the obligation of the parties to provide the trial court with sufficient evidence of the value of property. *In re Marriage of Wolf* (1989), 180 Ill. App. 3d 998, 1006, 536 N.E.2d 792, 797-98.

The trial court gave each party the personal property in his or her possession (including motor vehicles), and his or her pension, deferred compensation plan, and bank accounts. Petitioner also received both marital and nonmarital savings bonds. Respondent was ordered to continue making the $411-per-month payments on petitioner's car. The court then looked at the amounts contributed to each party's savings and retirement plans during the marriage, found the contributions to respondent's plans exceeded those to petitioner's, and reimbursed the marital estate for the amount by which respondent's contributions exceeded petitioner's. The court then gave petitioner 52% of the marital estate, or $23,000.

Section 503(d) of the Act directs the court to divide the marital property in "just proportions" after considering all relevant factors, including the value of the property set apart to each spouse, the duration of the marriage, the economic circumstances of each spouse, the reasonable opportunity of each spouse for future acquisition of capital assets and income and each spouse's age, health, employability and sources of income. (Ill. Rev. Stat. 1991, ch. 40, par. 503(d).) Just proportions does not mean strict equality but only an equitable division. (*In re Marriage of Cheger* (1991), 213 Ill. App. 3d 371, 381, 571 N.E.2d 1135, 1142.) A trial court's distribution of marital property will not be disturbed unless it is an abuse of discretion. *In re Marriage of Orlando* (1991), 218 Ill. App. 3d 312, 319, 577 N.E.2d

1334, 1340; *In re Marriage of Partyka* (1987), 158 Ill. App. 3d 545, 550, 511 N.E.2d 676, 680.

The parties here were married only six years. Most of their capital assets had been acquired prior to the marriage as they were 55 and 56 years old at the time the petition for dissolution was filed. Petitioner was not in good health prior to the marriage and her health problems continued during the marriage. These problems did not prevent her from holding down a job, however, and she testified she had planned to work until 1998 despite her health and only took early retirement along with respondent at his request. Petitioner was no longer employed, while respondent worked part-time as a self-employed handyman earning $300 to $500 monthly.

Petitioner notes respondent received far more items of personal property than she did as more were in his possession. However, parties should not be allowed to benefit on review from failure to introduce evidence at trial (*In re Marriage of Smith* (1983), 114 Ill. App. 3d 47, 54, 448 N.E.2d at 545, 550); therefore, a reviewing court will not reverse a trial court where parties have failed to produce evidence of value when there was ample opportunity to do so. (*Wolf,* 180 Ill. App. 3d at 1006, 536 N.E.2d at 798.) Respondent's pension and savings plans are greater than petitioner's but most of the contributions to those were made before the marriage. The trial court gave petitioner a greater proportion of the remaining assets credited to the marital estate, 52%, resulting in $23,000 owed to petitioner. We find no abuse of discretion in the distribution of property.

We are troubled, however, by the manner in which petitioner's share of the marital estate is to be paid to her. The trial court ordered the $23,000 paid in monthly installments of $350. In this form, it does not constitute income-producing property for petitioner nor does it provide the finality sought when a relationship is severed. As we have previously observed:

> "The efficacy of a property distribution results from placing in the hands of each party a definable or ascertainable portion of some attributes of ownership. In distributing property, courts should seek a high degree of finality so that parties can plan their future with certainty and are not encouraged to return repeatedly to the courts. [Citation.] An important objective to be reached by the trial court is to place the parties in a position to begin anew." (*Hollensbe v. Hollensbe* (1988), 165 Ill. App. 3d 522, 528, 519 N.E.2d 40, 44.)

While the court in *Hollensbe* was dealing with a large award of maintenance in lieu of a division of property, the concerns expressed by

the court are equally applicable here. Allowing respondent to pay petitioner $350 per month is analogous to ordering five years of maintenance in that amount. As the trial court indicated maintenance was not needed in this case, there seems to be no reason to prolong the relationship of the parties unnecessarily. If petitioner had the entire $23,000 amount available to her to invest and produce income, she would be less likely to feel impoverished by the dissolution and in need of either more marital property or an award of maintenance. While we have previously noted a party's share of marital property may be paid in periodic payments in order to prevent hardship (*In re Marriage of Patrick* (1992), 233 Ill. App. 3d 561, 572, 599 N.E.2d 117, 125), no such finding was made here. On remand, the trial court should reexamine the method by which petitioner is to be paid her share of marital property.

■ Finally, petitioner also argues she should have been awarded maintenance. The trial court found the marriage lasted only six years, both parties are retired, neither party is unable to support their marital lifestyle to a significant degree and, while petitioner has health problems, they predated the marriage. For these reasons, the court denied maintenance to each party, although it characterized the car payments respondent is to make on behalf of petitioner as maintenance.

The propriety, amount and duration of a maintenance award are matters within the sound discretion of the trial court and should not be disturbed absent an abuse of discretion. (*Cheger*, 213 Ill. App. 3d at 378, 571 N.E.2d at 1140.) The burden is on the party seeking reversal of the maintenance order to show an abuse of discretion. *In re Marriage of Eidson* (1992), 235 Ill. App. 3d 907, 913, 601 N.E.2d 298, 303.

Maintenance is only to be ordered after a consideration of all relevant factors, including financial resources of the parties; the time necessary to obtain adequate education or training to find appropriate employment; the standard of living established during the marriage, duration of the marriage, age and physical condition of both parties; the ability of the spouse from whom maintenance is sought to meet his or her own needs while meeting those of the other spouse; and the tax consequences of property division. (Ill. Rev. Stat. 1991, ch. 40, par. 504(a).) Both parties were employed for many years by the Illinois Department of Public Aid and are now retired. Petitioner obviously has job skills and, despite her health problems, had advanced steadily throughout the years receiving promotions and salary increases. Moreover, the evidence was unclear and speculative concerning the nature and extent of any future health problems

petitioner may have as the only evidence presented was that given by her. In fact, the petitioner had intended to work until 1998 and took early retirement to be with respondent, who was also retiring, and not because of ill health.

The evidence indicates a monthly short fall of $450 between petitioner's income and expenses, while respondent has enough income to cover his monthly expenses, including the car payments on behalf of petitioner. In addition, petitioner's pension benefits are 8% less than they would have been had she not taken early retirement. However, the marriage was of short duration, the marital lifestyle was not lavish and the petitioner is employable, health problems notwithstanding. Under the facts of this case, we are not prepared to find petitioner has met her burden of showing an abuse of discretion in the ruling of the trial court.

Accordingly, we affirm as to maintenance, but reverse and remand on the issue of division of marital property only: (1) contributions of the marital estate to respondent's nonmarital residence may be credited to the marital estate and divided accordingly, and (2) the trial court may consider whether the $23,000 cash award to petitioner may be more readily distributed to her.

Affirmed in part, reversed in part and remanded.

STEIGMANN, J., concurs.

JUSTICE COOK, dissenting:
I respectfully dissent, and would affirm the decision of the trial court, except for that portion of the trial court's order which required the $23,000 award of marital property be paid at the rate of $350 per month. Such an installment award is contrary to the "clean break" philosophy of the Act and is justified only in exceptional circumstances.

For purposes of reimbursement under section 503(c)(2), there is a difference between improvements and maintenance. If improvements do not in fact improve the property, if they do not increase its value, then they should not give rise to any right to reimbursement. If respondent here had spent his nonmarital funds on improvements which added nothing to the value of his house, and then sold it, he would have wasted his money. The result should be no different if petitioner and respondent together spent marital funds on improvements which added nothing to the value of the home. Parties sometimes make mistakes, or bad investments, with marital funds, and there is usually no way for one party to recover those funds from the other when the marriage is dissolved.

Maintenance expenditures are expenditures which are used to keep up or preserve property rather than improve it. Such expenditures are not expected to result in an increase in the value of the house but nevertheless benefit the owner or occupant. If the owner of a house allows another to live in the house without paying rent, upon the condition that the occupant maintain the property in its original condition, the occupant will incur many expenses over the years but the owner will end up with no more than what he had when he started. In that situation, the occupant receives the benefit of the maintenance expenses. Feldman and Fleck recommend that with maintenance expenses the contributing estate be reimbursed the amount of the contribution but only if the estate has not already been compensated. (Feldman & Fleck, *Taming Transmutation: A Guide to Illinois' New Rules on Property Classification and Division upon Dissolution of Marriage*, 72 Ill. B.J. 336, 342 (1984).) In contrast, Feldman and Fleck recommend that with improvements the contributing estate be reimbursed for the value added to the recipient property. 72 Ill. B.J. at 340-41.

In *Adams*, this court stated that, with a marriage of short duration, evidence of appreciation in value was not required before reimbursement could be ordered for improvements. (*Adams*, 183 Ill. App. 3d at 305, 538 N.E.2d at 1292.) Some of the work done in *Adams* was maintenance: windows and siding, and paneling and wallpaper in the bedroom and kitchen. As to those items, *Adams* states the correct rule. With a short marriage, the contributing estate may not have had the time to be compensated for its maintenance contributions and there should be some reimbursement even without an increase in value. The test is not increase in value but compensation. There were also improvements in *Adams*: a new patio and an addition to the basement. As to those items, I disagree with the *Adams* rule. If the improvements added nothing to the value of the property because they were poorly done, were not a good idea in the first place, or otherwise, then there should be no reimbursement. The decision whether the improvements have value can be made at the time of dissolution even though the marriage is of short duration.

It is sometimes difficult to determine whether particular expenses are improvements or just maintenance. The first item listed on petitioner's exhibit No. 11 is "remodeled kitchen—new cabinets, $2[,]036.03." Were there cabinets in the kitchen before these were installed? If so, had the old ones worn out or did these just look better? Were these cabinets a replacement or an upgrade? From the fact that the trial court found there was no increase in the value of the home, it appears that these cabinets were replacements and that

the old ones were still serviceable. We need consider the expenses claimed here only to the extent that they constituted maintenance.

Petitioner argues the couple had expended $14,717.18 for which the marital estate should be reimbursed. The parties had the use of the residence, however, during the approximately six years of the marriage. The trial court may have determined that the marital estate was thereby adequately compensated for its maintenance contributions, or the trial court may have determined that whatever minimal reimbursement was required was adequately handled by its award to petitioner of 52% of the marital property. The fact the new cabinets had many years of life left in them does not mandate reimbursement; compensation may be found in the other household fixtures which deteriorated during the marriage but were not replaced.

We do not know that the trial court determined there was adequate compensation here but we may sustain a judgment upon any ground which is called for by the record, regardless of whether the ground was relied upon by the trial court and regardless of whether the reason given by the trial court was correct. (*Material Service Corp. v. Department of Revenue* (1983), 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12; *Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill. 2d 135, 148, 478 N.E.2d 384, 389-90; *Hall v. Eaton* (1994), 259 Ill. App. 3d 319, 321, 631 N.E.2d 805, 807.) A reviewing court will extend all reasonable presumptions in favor of the judgment or order from which the appeal is taken, and will not presume that error occurred below. (*Village of Cary v. Jakubek* (1984), 121 Ill. App. 3d 341, 345-46, 459 N.E.2d 651, 654; *In re Marriage of Frazier* (1990), 205 Ill. App. 3d 621, 625, 563 N.E.2d 1236, 1239; *In re Marriage of Pitulla* (1990), 202 Ill. App. 3d 103, 114-15, 559 N.E.2d 819, 829.) I would affirm the trial court's resolution of the reimbursement issue in this case.

Section 503(c)(2) of the Act was a legislative response to the supreme court's decision in *In re Marriage of Smith* (1981), 86 Ill. 2d 518, 427 N.E.2d 1239. This area of the law is certainly more complicated since the enactment of section 503(c)(2), particularly if the Feldman and Fleck rules are followed. Nevertheless, I do not see any way to avoid complicated rules. It would be unfair to give a dollar-for-dollar reimbursement for maintenance expenses for which the contributing estate has already been compensated.