COVINGTON, Chief Judge.
This appeal on the behalf of the father of the decedent, himself now deceased, questions the applicability of the change in the scheme of forced heirship effected by Acts 1981, No. 442 — namely, the abolition of ascendants as a class of forced heirs — to the decedent’s testament, which was executed in 1977. The trial judge held that it was the testator’s intent to leave her father only his forced portion, which at the time of her death was nothing. We affirm the judgment of the district court for the reasons hereinafter expressed.
FACTS
Janice Ann Parker Williams died on February 24, 1989. At that time, Ms. Williams was divorced from her second husband, Edgar Lee Williams, Sr., and had no children. However, she and Mr. Williams, who resided in the house next to hers when the marriage ended amicably, both raised from infancy as their own child a male child whom Mr. Williams legally adopted, Edgar Lee Williams, Jr., also known as “Bucky.” Bucky freely moved between the two Williams houses as he grew up, and both Mr. and Ms. Williams provided for him in the event of their deaths by executing “reciprocal wills” leaving him the maximum amount possible, all of the disposable portions of their respective patrimonies. These statutory wills were executed on November 1, 1977, shortly after the couple divorced and Mr. Williams adopted Bucky. The same attorney, Prentice Smith, Jr., handled all of these matters; he testified at the hearing below that Mr. and Ms. Williams split the costs and his legal fees for everything, including the adoption by Mr. Williams only[1], “down the middle.”
The pertinent provisions in Ms. Williams’ testament were as follows:
*659 “ii.
I leave to my beloved father, Abe Parker, his forced portion of my estate.
III.
I bequeath to Edgar Lee Williams, Jr., the entire disposable portion of my estate. Edgar Lee Williams, Jr.’s name on his birth certificate is now Edgar Lee Turner, but his name is in the process of being changed due to the adoption by my former husband, Edgar Lee Williams. It is to this child I leave the portions stated herein no matter his legal status at the time of my death.
IV.
If my father, Abe Parker, should predecease me, I leave all of my property to Edgar Lee Williams, Jr.”
A petition to probate decedent’s last will and testament was filed on April 17, 1989, and the will was duly probated. Edgar Lee Williams, Sr., was confirmed as testamentary executor, and certain debts of the succession were authorized to be paid. On April 29, 1989, a joint petition was filed by Williams, Sr., as the executor and Williams, Jr., as legatee, requesting that Williams, Jr., be sent into possession of part of his legacy, $25,000.00, under LSA-C.C.P. art. 3372. The petition also alleged that since the law regarding parents as forced heirs was changed for persons whose deaths occurred after December 31, 1981, appellee, Williams, Jr., was entitled to the entire succession. A judgment of possession sending Williams, Jr., into possession of $25,000.00 of his legacy was signed on April 28, 1989.
On May 24, 1989, a petition to annul the probated testament of Janice Ann Parker Williams was filed on behalf of her father, Abe Parker, Jr., by his curatrix[2], based on the contention that the intent of the testatrix had been violated. In the alternative, the curatrix sought a declaratory judgment decreeing that the provisions of decedent’s testament were not affected by the changes enacted by Act 442 of 1981 because of problems with retroactive application of the act to a testament executed in 1977. A contention made in this petition that the purported signature of the testatrix was actually false was dropped, and the parties stipulated at trial that the will was validly executed.
Abe Parker, Jr., the testatrix’s father, has resided in nursing homes since 1974. Testimony was introduced at the hearing below indicating that Ms. Williams and her father were close, and that she visited him at least once a week even after she became injured and was consequently unable to drive. Appellants[3] argue here, as they did below, that despite the use of the language “forced portion,” Ms. Williams intended to bequeath one-third of her patrimony to her father independently of legal requirements at the time the testament was executed.
The trial judge found that the testatrix’s intent was to leave her father only that which was required by law, rather than a specific portion of her patrimony, and that at the time of the hearing, the law required her to leave nothing to her father. A motion for new trial was timely filed on behalf of Mr. Parker, and in the attached memorandum in support of the motion, mover attempted to challenge the constitutionality of the change in the forced heirship scheme. The motion for new trial was denied by judgment signed on October 5, 1989, and this appeal followed.[4]
*660 Prior to its repeal in 1981 and at the time the testament herein was executed, LSA-C.C. art. 1494 provided as follows:
Donations inter vivos or mortis causa can not exceed two-thirds of the property, if the disposer, having no children, leaves a father, mother, or both, provided that where the legal portion of the surviving father, mother, or both is less than one-third the forced portion shall not be increased to one-third but shall remain at the legal portion.
Thus, since Ms. Parker had no children of her own by blood or adoption, her father would have been entitled to one-third of her patrimony. However, Act 442 of 1981 repealed this article in its entirety, said repeal to “apply to property of persons whose date of death is after December 31, 1981.”
Prentice Smith, Jr., the attorney whose office drafted the testament, testified at trial that when the legislature changed the scheme of forced heirship regarding parents, he had his staff pull every testament that might be affected, and that a form letter was sent to each client involved advising of the change in the law and suggesting a followup by the client. He thought that only one such letter went out to Mr. and Mrs. Williams despite the divorce, and that it was sent to Mr. Williams’ address. Neither Mr. nor Mrs. Williams contacted him subsequently to change the testaments.
Appellant contends that the language as to the effective date of Act 442 is silent as to whether individuals who have executed testaments prior to January 1,1982, will be effected. She asserts that the legislative intent was not to effect wills and codicils executed prior to the effective date of the repeal regardless of the date of death. We find these arguments unpersuasive.
The simplicity of the language used by the legislature does not lend itself to any other interpretation than that if a person died after December 31,1981, regardless of when that person executed his will, the legislature intended that Act 442 apply to that person’s succession. Since a testament is not governed by the same requirements and considerations as a contract, arguments regarding impairment of contractual rights are inapposite.
Since the trial judge’s determination of the testatrix’s intent was a factual one, which we do not find to be manifestly erroneous, and we find no legal error, we affirm the judgment of the trial court.
Costs of this appeal are assessed to the appellant.
AFFIRMED.
GONZALES, J., concurs and assigns reasons.

. The testimony of Mr. Smith was that the child was adopted by only Mr. Williams because the couple were divorcing and because everyone agreed it would be procedurally and financially better for Bucky if only one of the two divorced parties, Mr. Williams, adopted him.

. Abe Parker, Jr., was legally interdicted and another of his daughters, Marjorie Parker Cain, was appointed as his curatrix.

. Abe Parker, Jr., died on November 2, 1989. His heirs were substituted as parties by order of the trial court filed into the record on November 28, 1989. His succession representative, Marjorie Parker Cain, filed the petition for appeal herein.

.Appellant argues in brief the alleged unconstitutionality of Act 442 of 1981. However, a litigant who fails to plead and put at issue the unconstitutionality of a statute in a trial court cannot raise the constitutional issue in the appellate court. We agree with our brethren in the Third Circuit that raising the issue of unconstitutionality of a statute in a motion for new trial, after judgment adverse to the moving party, is not timely. See, Jarred v. Jarred, 355 So.2d *660 566 (La.App.3d Cir.1978). Therefore, we do not address those arguments.