608 So.2d 973 (1992)
In the Matter of the Succession of Janice Ann Parker WILLIAMS.
No. 91-C-2063.
Supreme Court of Louisiana.
November 30, 1992.
*974 William W. Hall, William P. Connick, Arthur J. Lentini, Hall, Lentini, Mouledoux & Wimberly, Metairie for applicant.
Prentice L.G. Smith, Jr., Patricia R. Smith, Smith & Smith, Baker, for respondent.
LEMMON, Justice.
This is a will contest between the testatrix's father and the legatee of the disposable portion of the testatrix's estate. The issue is whether the testatrix's bequest of the "forced portion of my estate" to her father, in a will confected at the time when parents were forced heirs, expressed an intent to leave her father a specific portion of her estate or an intent to leave her father only the portion of her estate required by law to be given to a parent as a forced heir. Determination of the testatrix's intent was crucial because forced heirship for parents was abolished before the testatrix died.
The testatrix was married twice and had no children from either marriage. During her second marriage she and her husband, Edgar Williams, Sr., raised from infancy her husband's illegitimate child, Edgar Turner, who had been born in 1967.
In 1977 the testatrix and her husband consulted an attorney about a divorce, as well as about adopting the child and making wills. The parties were divorced in March, 1977, but they continued to live next door to each other and she continued to treat the child as her own.
On November 1, 1977 the testatrix and Edgar Williams, Sr. executed contemporaneous wills in which each left the disposable portion of his or her estate to Williams' child and each named the other as executor. The pertinent portions of the testatrix's will provided as follows:
II.
I leave to my beloved father, Abe Parker, his forced portion of my estate.
III.
I bequeath to Edgar Lee Williams, Jr., the entire disposable portion of my estate. Edgar Lee Williams, Jr.'s name on his birth certificate is now Edgar Lee Turner, but his name is in the process of being changed due to the adoption by my former husband, Edgar Lee Williams. It is to this child I leave the portions stated herein no matter his legal status at the time of my death.
IV.
If my father, Abe Parker, should predecease me, I leave all of my property to Edgar Lee Williams, Jr.[1]
At the time of the making of the wills, La.Civ.Code art. 1494 provided:
Donations inter vivos or mortis cause can not exceed two-thirds of the property, if the disposer, having no children, leaves a father, mother, or both, provided that where the legal portion of the surviving father, mother, or both is less than one-third the forced portion shall not be increased to one-third but shall remain at the legal portion.[2]
*975 Article 1494 was repealed by La.Acts 1981, No. 442, which expressly made the repeal applicable "to the property of persons whose date of death is after December 31, 1981." The testatrix died in 1989, maintaining the close relationship with the child until her death.[3]
After the will was probated, Williams, Sr., as executor, and Williams, Jr., as legatee, filed a joint petition to recognize Williams, Jr.'s entitlement to the entire estate. The pleading asserted that the testatrix had bequeathed only the forced portion of the estate to her father and that since at the testator's death the forced portion for parents of persons who died after December 31, 1981 had been abolished, the testatrix's father was entitled to nothing. In opposition, the father filed a pleading claiming one-third of the estate in accordance with the will of the testatrix.[4]
Evidence at the hearing established that the testatrix and her father remained close until her death, even though he had lived in nursing homes after 1974. She visited him at least once a week and took him gifts, even after she was unable to drive following the 1984 injury.
The trial judge decided that Williams, Jr. was entitled to the entire estate. The judge reasoned that although the testatrix's words arguably indicated "a desire to leave [her father] something," the words equally indicated "a desire to leave [her father] only that portion that the law requires to be left" to a parent. (emphasis added). Since the law at the time of the testatrix's death did not require her to leave anything to her parent, the judge concluded that the forced portion referred to by the testatrix was zero.
The court of appeal affirmed. 593 So.2d 658. Noting that the trial judge found the testatrix's intent was to leave her father only that which was required by law, the court of appeal concluded that the trial judge's factual finding as to the testatrix's intent was not manifestly erroneous.[5]
The intent of the testator is the paramount consideration in determining the provisions of a will. La.Civ.Code art. 1712. When a will is free from ambiguity, the will must be carried out according to its written terms, without reference to information outside the will. Id. However, when a provision in a will is subject to more than one equally reasonable interpretation, then the court may consider all circumstances existing at the time of the execution of the will (and not just the language of the will) which may aid in determining the intent of the testator. La.Civ. Code art. 1715.
In the present case the provision in the testatrix's will leaving the "forced portion of my estate" to her father was subject to two reasonable interpretations. The testatrix, who had been informed about the forced heirship law in existence at the time of the making of the will, could have intended by her words to leave to her father one-fourth of her estate, which was the amount of the forced portion under the existing law. On the other hand, the testatrix could have intended to leave to her father only the portion of her estate required by the forced heirship law existing at the time of her death, whether the forced heirship law remained the same or was subsequently changed to increase, decrease or abolish forced heirship.[6] The trial *976 judge chose the latter interpretation, without referring to any reasoning or extraneous circumstances involved in his selection.
The problem with the interpretation selected by the trial judge is that such a position requires an assumption that the testatrix intended to leave her father absolutely nothing unless the law specifically required her to do so and to give everything to a person to whom she was not related by blood or marriage.[7] That position also requires an assumption that the testatrix considered the possible change in the law of forced heirship and affirmatively decided to leave a lesser amount, or nothing, to her father if the forced portion was later reduced or abolished by the Legislature.[8]
The testatrix's giving her father the "forced portion" was a positive expression of donative intent. The interpretation of the positive bequest by the testatrix to her "beloved father" as intending that he receive nothing unless the law absolutely required it (while a non-relative received everything) was simply not as reasonable as the interpretation that she intended to leave a specific bequest to her father and chose the amount that he would receive by law, either in the absence of a will or in the event that she disposed by will of more than the forced portion.[9] The interpretation by the lower courts rendered meaningless a positive statement of donative intent which under La.Civ.Code art. 1713 should be understood in the sense that it has effect.
Moreover, at the time of the making of the wills immediately after the divorce, the testatrix's former husband obviously exercised considerable control over her decisions regarding the will, which was drafted by the former husband's attorney (who continues to represent him). The will names the former husband as the executor and gives his child the entire disposable portion.[10] These circumstances dictate that if the testatrix's former husband's child is to inherit all of her estate (to the exclusion of the testatrix's father who was affirmatively named in the will) because of a change in the forced heirship law between her making the will and her death, that intention should have been clearly expressed in the language of the will. In the absence of an express statement of intention to the contrary, the circumstances give rise to the inference that the testatrix, in affirmatively leaving a portion of her estate to her father if she predeceased him, intended to give him something rather than nothing. There were no circumstances or language in the will which suggested that the testatrix was reluctant to leave her father anything, or that she grudgingly left him only the minimum amount because she was forced to do so, or that she intended the amount to be less if the law changed to reduce or abolish the forced portion for parents.
We conclude that the positive statement of donative intent, under the circumstances surrounding the confection of the will and the overall terms of the will, warrants recognition as a legacy of a specific amount to the father in accordance with the intention of the testatrix.
*977 Accordingly, the judgments of the lower courts are reversed, and the claim of the father is recognized to the extent of one-fourth of the testatrix's estate. The case is remanded to the district court for further proceedings.
WATSON, J., concurs in the result.
HALL, J., dissents and assigns reasons.
HALL, Justice, dissenting.
I respectfully dissent.
While the majority is correct in stating that our fundamental responsibility is to ascertain the intent of the testatrix, we cannot ignore the plain language of the testament. The duty to examine the words of a will is found in LSA-C.C. Art. 1712, which provides:
In the interpretation of acts of last will, the intention of the testator must principally be endeavored to be ascertained, without departing, however, from the proper signification of the terms of the testament. [emphasis added].
In other words, while the court must endeavor to give all legacies of a will effect, the court cannot ignore the will as it is written. Succession of Merritt, 581 So.2d 728 (La.App. 1 Cir.1991), writ denied 584 So.2d 1165 (La.1991). The trial court, affirmed by the court of appeal, held that the language of the testament leaving only the forced portion to the father indicated "a desire to leave [him] only that portion that the law required to be left to a parent."
The law in effect at the time of death is controlling. Harlaux v. Harlaux, 426 So.2d 602 (La.1983); Succession of Landry, 460 So.2d 29 (La.App. 1 Cir.1984). This is the case since the rights in a succession do not vest until the death of the testatrix. Succession of Vincent v. Vincent, 527 So.2d 23 (La.App. 3 Cir.1988). Additionally, when Acts 1981, No. 442 repealed the forced heirship of parents, the legislature clearly expressed its intent that the new law would apply "to the property of persons whose date of death is after December 31, 1981."
The testatrix bequeathed "his forced portion" of her estate to her father and "the entire disposable portion" of her estate to the child she raised as her own. Applying the terms of the will literally in accordance with the law as it existed at the time of her death, there being no forced portion due the father and her entire estate being disposable, the entire estate should go to the child.
The record evidence does not support the inferences of a contrary intent mentioned in the majority opinion. There is absolutely no evidence that the testatrix's former husband exerted any influence over her execution of the will. There is no basis for drawing inferences from the fact that the father was a blood relative and the child was not. The evidence establishes that she treated the child as her own. The terms of the will, however interpreted, clearly disclose her intent to favor the child, who would not have inherited absent a will over the blood-related father and siblings, who at the time the will was executed, would have inherited the entire estate (one-fourth to the father and three-fourths to the siblings) absent a will.
The majority errs in focusing on the bequest to the father rather than the bequest to the child. Read together, it seems clear that the intent was to leave the father only that which the law requires, the forced portion, and to leave to the child all that the law allows, the entire disposable portion. Undoubtedly, the testatrix believed at the time the will was executed that the father would get one-fourth because that was what the law required at that time. But that belief does not detract from the intent evidenced by the written words that the father receive only the portion the law required and that the child receive all she could dispose of to him. Had the testatrix intended specifically that the father receive one-fourth and the child three-fourths, she could have expressed that intent by using those terms in the testament.
The judgment of the trial court, affirmed by the court of appeal, holding that the testament requires the entire estate be given to the child, Edgar Lee Williams, Jr., should be affirmed.
NOTES
[1] After the wills were executed, Williams completed the adoption of his illegitimate child and changed the child's name to Edgar Williams, Jr. The attorney who handled the divorce and drafted the wills testified that he advised the testatrix against adopting the child herself.
[2] Because at the time of the making of the will the testatrix's mother was dead and the testatrix had living siblings, the "legal portion" which the testatrix's father under the then existing law would have been entitled to inherit upon the testatrix's death was one-fourth of her estate. See Civ.Code art. 903, 904 and 911, which were repealed in 1981.
[3] At the testatrix's death she had obtained a judgment in a pending personal injury action arising from a 1984 accident. The judgment became definitive two months after her death, and the judgment proceeds of $485,000 constitute the major asset of her succession.
[4] The forced portion was actually one-fourth. See footnote 2.
[5] The trial judge did not expressly make such a finding of fact. Rather, the judge simply stated the two possible interpretations of the testatrix's words and then pronounced judgment without explaining why he chose that interpretation by inserting the word "only" into the testament.
[6] The testatrix did not specify a fixed percentage of her estate to be left to her father or specify he was to receive only what the forced heirship law existing at the time of her death required her to leave to him. Such specificity would have shown her intent clearly.
[7] Admittedly, she had a close relationship with the child, but she also maintained a close relationship with her father, visiting him frequently in the nursing home and bringing him gifts. Moreover, despite the fact that she lived next door to her former husband after the divorce in 1977, she lived her last eight years in a common law relationship with another man until her death in 1989.
[8] Of course, the testatrix did not have to consider the consequences of a legislative increase in the forced portion for ascendants, since this change would have been effected by operation of law irrespective of the terms of the will or the absence of a will.
[9] If the testatrix had wanted her father to receive no more of her estate than the law absolutely required, she could have either said so expressly or left him out of the will, thereby allowing the law in effect at her death to be applied.
[10] The record does not show the extent of the testatrix's property at the time of her making the will. The accident which gave rise to the major succession asset had not yet occurred.